(40 Misc. Rep. 533.)

## STENSON v. CITY OF NEW YORK.

(Supreme Court, Trial Term, New York County. April, 1903.)

1. MUNICIPAL CORPORATIONS—WORKHOUSE ORDERLY—SALARY.

Where a person was appointed by the head of the New York City department of correction as an orderly in the workhouse on Blackwell's Island, the salary of which was $300 a year, and on the next day was told the warden of the workhouse to report at Hart's Island, where he acted as keeper for two years; which office has a salary attached of $800 per year, he cannot recover the salary of keeper from the city,

where there is no evidence of his appointment by the head of the de-
partment as keeper, or that any authority was given to the warden to
make such appointment.

Action by William J. Stenson against the city of New York for
salary. Judgment for defendant.

J. W. Finch, for plaintiff.
G. L. Rives, Corp. Counsel, for defendant.

GILDERSLEEVE, J.  The plaintiff was employed in the depart-
ment of correction, and he sues for the difference in pay between
the amount actually received by him for his services and that which
he claims is due to him for such services.  The case was tried before
the court without a jury.  About August 19, 1897, plaintiff was duly
appointed an "orderly" in the workhouse on Blackwell's Island, at a
salary of $300 a year. · On or about September 16, 1897, the warden
of the workhouse looked over the list of employés, and picked out
plaintiff's name, and told a subordinate to direct plaintiff to report
to Hart's Island the next day for duty.  Plaintiff did so report, and he
claims that he there performed the duties of a keeper from Septem-
ber 17, 1897, to July 21, 1899.  The defendant denies this in its an-
swer, but there is evidence sufficient to sustain plaintiff's claim in this
respect.  The salary of keeper was $800 per annum.  Plaintiff, how-
ever, during said period from September 17, 1897, to July 21, 1899,
received only $300 a year, for which he duly receipted, and con-
tinued to receive such salary until about October 28, 1899, when he
resigned his place "as orderly."  He brings this action for $916.67,
as the difference between the pay of an orderly and that of a keeper
during the said period from September 17, 1897, to July 21, 1899.
Under the then existing statutes (Laws 1897, c. 378, § 1543) the heads
of departments had the power to appoint and remove the employés
and subordinates in their respective departments.  The head of the
department of correction was the commissioner of correction.  It is
not pretended that the commissioner, either in writing or orally, ap-
pointed the plaintiff to the position of keeper, or changed the amount
of salary, as, under the statute, he had the power to do, subject to
the approval of the board of estimate and apportionment.  The only
claim of plaintiff is that a subordinate of the commissioner (i. e., the
warden) orally directed the assignment of plaintiff to duty as a keeper.
The position of keeper seems to have been an office, within the mean-
ing of the authorities, as the employment does not appear to have been
transient, occasional, or accidental, and the salary fixed was by the
year.  The position was not a menial one, such as a janitor or servant,
nor was the incumbent a per diem laborer, whose employment might
be evidenced by a mere verbal direction to go to work at prevailing
rates.  It would, therefore, seem to come within the authority of the
case of People ex rel. Barry v. Keller, 30 Misc. Rep. 52, 61 N. Y.
Supp. 746, where the late Justice McAdam used the following lan-
guage, viz.: "The controlling authorities hold that an appointment
to public office must be in writing, or in the form of a resolution of
the appointing board, duly entered in its records."  In the case at

bar not only was the alleged appointment not in writing, but it was not made, as we have seen, by the appointing officer, i. e., the commissioner. There is no evidence here that the commissioner delegated to the warden the power to make appointments or raise salaries, although apparently, under the charter of 1897, he could delegate such power of appointment to his subordinate. Charter of 1897, § 694. In the case of Graham v. City of New York, 33 Misc. Rep. 56, 66 N. Y. Supp. 754, Mr. Justice McAdam wrote as follows, viz.: "In order to establish a legal demand against the municipality, even for services rendered, there must first be an employment by lawful authority."

The learned counsel for plaintiff claims that in accepting plaintiff's services as keeper the city ratified the act of the warden. It is not shown, however, that the commissioner of correction ever received notice of such employment, either actual or constructive. It may be true that the warden had general supervision of both the workhouse at Blackwell's Island and Hart's Island, as claimed by plaintiff's counsel, but he had no authority, so far as here appears, to raise plaintiff from the position of orderly, at $300 a year, to that of keeper, at $800. In the case last above quoted, Mr. Justice McAdam proceeded as follows, viz.:

"A person dealing with the agent of a municipal corporation has no right to assume that he is acting within the line of his duty, but must take care to learn the nature and extent of his authority. * * * Civil service rules, made pursuant to statute, * * * would be defeated entirely if the courts were to hold that so long as one employed by a city official does work he is entitled to recover from the municipality, irrespective of the question whether the employment was in accordance with or in violation of such rules. Such a principle * * * would leave open the sole inquiry whether services had been rendered, and eliminate as irrelevant the question whether they were performed under a valid or an illegal employment."

The corporation counsel refers me to the case of McCunney v. City of New York, 40 App. Div. 482, 58 N. Y. Supp. 138, where it was held that a person employed by a municipal corporation in a particular capacity, as to which the law has fixed the compensation, must be paid in that capacity, and not for work of different kind to which he may be detailed. The plaintiff's counsel claims that this case can be distinguished from the case at bar for the reason that "McCunney was a driver in the street-cleaning department, whose salary was fixed by statute at a sum not to exceed $720 per annum, while Stenson's salary as orderly was fixed by the commissioner, subject to the approval by the board of estimate and apportionment." In that case the late Justice Rumsey said:

"The statute fixes the compensation for the position, to which the man is appointed, and, when it is so fixed, the fact that he does work of a different kind is of no importance, because no party has a right to change the obligations which the statute creates."

In the case at bar the salary was fixed by the commissioner, with the approval of the board of estimate, and the warden had no right to change the obligation which was thus created; so that the fact that plaintiff was detailed to do work of a different kind is unavoidable, since such detail was not authorized by the commissioner, or even

brought to his knowledge. Under the circumstances of this case, and in view of the authorities above cited, I am of opinion that the complaint must be dismissed. Judgment accordingly. Give notice of settlement.

Judgment accordingly.